**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**FRANKLIN XAVIER,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**                                            **No. 03-CV-766-DRH**

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

## I.  <u>Introduction</u>

Before the Court is Franklin Xavier's petition/motion for relief under **28 U.S.C. § 2255** submitted by his counsel, Attorney Andrew M. Cohen.  (Doc. 1.) Petitioner argues he is entitled to relief under **§ 2255** because his Trial and Appellate Counsel provided ineffective assistance in violation of his Sixth Amendment right to counsel.  Specifically, Xavier claims his Trial and Appeal Counsel should have done more to oppose the Government's submission of a videotape containing an admission by him.  The Government has responded in opposition to the petition. Based on the following, the Court denies Xavier's petition/motion.

## II. **Background**

On June 22, 2001, the Grand Jury returned a two-count superseding indictment against Franklin Xavier.  (Doc. 1, Ex. 2.)  Count 1 charged Xavier with forcibly assaulting and resisting United States Aviation Security Officer William A. Pierce on May 1, 2000, in violation of **18 U.S.C. § 111**.  (Doc. 1, Ex. 2.)  Count 2 charged Xavier with threatening on May 1, 2000, to murder United States Senior Aviation Enforcement Officer David Lowery and his immediate family in violation of **18 U.S.C. § 115(a)(2)** and **(b)(4)**.  (Doc. 1, Ex. 2.)  Xavier pled not guilty to the charges, and a bench trial was held before this Judge on October 15, 2001.  (Doc. 1, p. 2.)  Evidence and testimony given at trial showed generally that Xavier, a practicing Rastafarian who wears his hair in dreadlocks, was a prisoner in the process of being transported on May 1, 2000, when he attacked and threatened security officers who tried to search his hair in accordance with prisoner transport procedures.  (R. at 70-71, 84, 91-92, 95, 147-150.)

During its case in chief, the Government presented evidence along with testimony from Officer William Dean May, Jr., Officer William Pierce, Officer David Lowery, and Physician's Assistant David T. Abbott.  (R. at 2, 22-112.)  The Government showed that on May 1, 2000, Xavier was to be transported by the United States Bureau of Prisons (BOP) to Mid America Airport among a group of other Marion Penitentiary inmates.  (R. at 25, 33.)  At Mid American Airport, Xavier was to be placed aboard a flight operated by the Justice Prisoner and Alien

Transportation System (JPATS).  (R. at 44, 51-52.)  After being transferred at the airport from BOP's custody to the custody of the United States Marshals Service (USMS) for a routine search, Xavier began cursing profanely at members of the USMS and saying they were not going to search his hair.  (R. at 36, 52, 54, 56, 80-83.) A member of the USMS approached Xavier and showed him that he would wear rubber gloves while searching his hair, at which point Xavier kicked Officer William Pierce in the lower portion of his leg as Officer Pierce attempted to place his right foot on the chain between the restraints attached to Xavier's legs.  (R. at 36-37, 63, 70-71, 84, 95.)  Xavier was subsequently taken to the ground of the tarmac, searched, and further restrained by Senior Aviation Enforcement Officer David Lowery.  (R. at 57, 84-85.)  In the course of being taken down to the tarmac, Xavier incurred injuries causing abrasions and later swelling.  (R. at 93, 109-110.)  Officer Lowery sustained a bruised right knee and was subsequently diagnosed with an internal derangement of his left knee.  (R. at 101.)

After additional restraints were placed on Xavier, he was boarded onto the JPATS plane.  (R. at 57, 86.)  Once inside the aircraft, Xavier was cargo strapped to three seats in the rear portion of the plane to prevent him from injuring anyone. (R. at 58, 87.)  While being restrained, Xavier threatened USMS members that he would kill them and their family, find out where they live, and chop up their children with a machete.  (R. at 58.)  During a subsequent flight between Sioux Falls and Oklahoma City, Xavier was no longer agitated or shouting when Officer Lowery took a photograph of him.  (R. at 90.)  When Officer Lowery went back to check on Xavier

some time later, Xavier told Lowery in a collected fashion that he would kill Lowery, his wife, and his children. (R. at 91-92.)

An important part of the Government's evidence and testimony for purposes of this 2255 petition is a videotape of the conversation between Xavier and BOP Physician's Assistant David Abbott as well as Abbott's testimony about what Xavier told him. (R. at 107-09.) During the trial, BOP Physician's Assistant David Abbott testified that he examined Xavier in the Receiving and Discharge section of the Federal transfer Facility in Oklahoma City upon Xavier's arrival. (R. at 105.) Abbott stated that after Xavier was processed into the institution at Oklahoma City, Abbott completed a standard processing form for recording prisoners' injuries. (R. at 106-07.) Abbott testified that while completing the processing assessment form, Xavier told him that officers had wanted to examine his hair and that Xavier would have allowed this had the individuals worn gloves. (R. at 108.) Xavier then told Abbott that the officers called him a punk "and so [he] kicked them." (R. at 108.) Abbott stated that his assessment and Xavier's statements were not only documented on a form but also recorded on videotape which constituted a fair and accurate recording of the exchange. (R. at 108.) The videotape was consistent with Abbott's testimony and was admitted into evidence without any objection from Xavier's Trial Counsel (R. at 108-09.) Later, during the Defense's case in chief, Xavier stated that he knew at the time he was being videotaped. (R. at 181.)

Following the close of the Government's case, Attorney Moorman presented the Defendant's case in chief. (R. at 116-86.) Attorney Moorman called

three witnesses to testify as well as Xavier. (R. at 116-86.) Defense witnesses Lawyer Walker, Ellis McHenry, and Jesus Macias all testified (1) that they were prisoners being transported with Xavier the day of the charged incidents (R. at 117, 127, 142-43), (2) that they did not see Xavier kick anyone (R. at 126, 129, 144), and (3) that they did not hear Xavier make any threats to anyone (R. at 120, 132, 144). During his own testimony, Xavier testified that he did not kick anyone or make any threats. (R. at 150, 152, 156.)

Following the Defense's case in chief, the Government put on Officer Jeff Larson as a rebuttal witness. (R. at 187.) Over Attorney Moorman's objection, the Court allowed Officer Larson to testify that Xavier was confrontational with officers on the day of the incident, evidenced specifically by Xavier's statement that all U.S. Marshals are "Nazis." (R. at 187-89.)

After Officer Larson's testimony, both the Government's Attorney and Defense Attorney Moorman presented closing arguments that were equal in detail and length. (R. at 190-204.) The Court then recessed to consider the testimonies, evidence, and arguments. (R. at 204-05.) Upon return, the Court issued its findings of facts and concluded Xavier was guilty of the two charged counts. (R. at 205-08.)

On November 1, 2001, a little more than two weeks after the trial, the Court allowed Attorney Moorman to withdraw as Defense Counsel and appointed Attorney James A. Gomric in his place. (Doc. 28 in 01-CR-30038-DRH.) On November 2, 2004, Attorney Moorman filed a motion seeking leave to file a post trial motion instanter. (Doc. 1, Ex. 3; Doc. 30 in 01-CR-30038-DRH.) The Court denied

the motion as being filed late since it was submitted more than seven days after the trial.  (Doc. 1, Ex. 4; Doc. 33 in 01-CR-30038-DRH.)

On March 1, 2002, the court sentenced Xavier to a term of 36 months on Count 1 and a term of 60 months on Count 2, with the two sentences to run concurrently.  Xavier's Appeal Counsel, James Gomric, then appealed based only on two sentencing issues, and the Seventh Circuit affirmed this district court's decision. ***United States v. Xavier*, 310 F.3d 1025 (7th Cir. 2002)**.

In a signed affidavit attached to the Government's response (Doc. 19, Ex. F),[1] Attorney Moorman claims he received a copy of the videotape at Xavier's request believing it would show Xavier was injured.  (Moorman Aff. ¶¶ 7, 13).  Moorman also asserts that he reviewed the videotape two or three times before trial, including once with Xavier.  (Moorman Aff. ¶ 8.)  Moorman states though that he did not notice Xavier's brief admission on the videotape and did not move to suppress Xavier's statements on the tape.  (Moorman Aff. ¶¶ 10, 12.)

### III.  Analysis

**A.  The Standard**

**28 U.S.C. § 2255** provides:

A prisoner in custody under sentence of a court established by the Act of Congress claiming the right to be released upon the ground that the sentence was imposed

---

[1] Petitioner apparently intended to submit Attorney Moorman's affidavit as exhibit 7 to his petition but failed to do so.  (Doc. 1.)

in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Section 2255 was enacted to provide the court of the district in which a defendant is *sentenced* the same remedies available by habeas corpus proceedings to the court of the district in which a prisoner is *confined*. **Hill v. United States, 368 U.S. 424, 427 (1962)**. The grounds for relief under § 2255 are considerably more narrow than the grounds for relief on direct appeal. Relief under § 2255 is "reserved for extraordinary situations." **Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993)**. "Where a record conclusively demonstrates that defendant is entitled to no relief on his § 2255 petition to vacate sentence, a full evidentiary hearing is not required." **Politte v. United States, 852 F.2d 924, 931 (7th Cir. 1988)(quoting United States v. Robinson, 585 F.2d 274 280 (7th Cir. 1978))**.

A § 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal." **Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995); see also Daniels v. United States, 26 F.3d 706, 711 (7th Cir. 1994)**. Therefore,

An issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

***Prewitt*, 83 F.3d at 816 (emphasis in original).  *See also Reed v. Farley*, 512 U.S. 339, 354 (1994).**  The Seventh Circuit has made it very clear that there are three types of issues that cannot be raised in a § 2255 motion:

> "(1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised of direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal."

***Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).**  With these principles in mind, the Court assesses the merits of Petitioner's § 2255 motion.

To establish a claim of ineffective assistance of counsel, a petitioner must show two things.  First, the petitioner must show that his counsel performed in a deficient manner.  ***Strickland v. Washington,* 466 U.S. 668, 687 (1984).**  Second, the petitioner must show that counsel's deficient performance prejudiced him.  ***Id.* at 687.**

To satisfy the first prong, the petitioner must direct the Court to specific acts or omissions of his counsel.  ***United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).**  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representations fell below an objective standard of reasonableness."  ***Strickland,* 466 U.S. at 687-688.**  A court, in reviewing a petitioner's claim of ineffective assistance of counsel, must

give great deference to the attorney's performance due to the distorting effects of hindsight. *Id.* **at 689**. In addition, the petitioner must overcome a strong presumption that the attorney's conduct falls within a wide range of reasonable professional assistance. *Id.*; *Trevino*, **60 F.3d at 338.** Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Trevino*, **60 F.3d at 338.** The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, **894 F.2d 871, 877 (7th Cir. 1990)**.

To satisfy the second prong of the *Strickland* test, the petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain v. United States*, **211 F.3d 429, 434 (7th Cir. 2000).** Specifically, a petitioner must show that counsel's errors "actually had an adverse effect on the defense." *Strickland,* **466 U.S. at 693**. Further, the Supreme Court has held that a defendant must show that counsel's errors rendered the proceedings "fundamentally unfair or unreliable" in addition to simply showing prejudice. *Lockhart v. Fretwell*, **506 U.S. 364 (1993)**.

### B. Claim 1 – Attorney Moorman's pretrial review of the videotape

Petitioner first argues in Claim 1 that Attorney Moorman failed to provide him with effective assistance of counsel as required under the Sixth

Amendment because Moorman failed to adequately review the videotape during discovery. (Doc. 1, p. 23-24.)  Specifically, Attorney Moorman claims in his affidavit that prior to trial he "viewed the video tape two or three times before trial, and on at least one occasion viewed the video tape in the company of defendant Xavier" but that "[d]ue to the quality of the tape, or due to Xavier's accent, or for some other reason, [he] did not notice that Xavier had made a brief admission during the interview recorded on the video."  (Moorman Aff. ¶¶ 8, 10.)

The Court concludes that Petitioner has not shown ineffective assistance of counsel for several reasons.  First, Petitioner has not met his burden under the first prong of *Strickland* that requires a showing that Moorman's actions fell "below an objective standard of reasonableness."   According to Attorney Moorman, he reviewed the tape "two or three times" and even reviewed the tape once with Petitioner.  Any failure by Attorney Moorman to notice Xavier's admission cannot be attributable to an unreasonable effort by Moorman, but rather to the fact that the admission was "brief" in conjunction with "the quality of the tape, or due to Xavier's accent, or for some other reason."   An attorney is not expected to be infallible, *United States v. Zylstra*, **713 F.2d 1332, 1338 (7th Cir. 1983)**, but instead to provide objectively reasonable assistance, which Attorney Moorman certainly did in these circumstances by reviewing the videotape as he did.

Second, Petitioner has not met his burden under the second prong of *Strickland* since evidence besides the videotape also established Petitioner's

admission.  Assuming Moorman had discovered the brief admission on the videotape and successfully suppressed or objected to the videotape, Physician's Assistant David Abbott's testimony (which this Petition does not challenge) would still have been before the Court.  Consequently, Xavier's admission would have still been before the Court.  Abbott's testimony in addition to the testimony of other officers that Xavier committed the charged acts precludes a reasonable possibility that Xavier might have presented a successful defense had the videotape not been admitted.

### C.    Claim 2 – Attorney Moorman's "failure" to object to the videotape at trial based on *Miranda*.

Petitioner next argues in Claim 2 that Attorney Moorman failed to provide him with effective assistance of counsel as required under the Sixth Amendment when Moorman failed to challenge admission of the videotape at trial based on *Miranda*.  (Doc. 1, p. 24-25.)

The Court concludes that Petitioner has not shown ineffective assistance of counsel for several reasons.  First, Petitioner has not met his burden under the first prong of *Strickland* that requires a showing that Moorman's actions fell "below an objective standard of reasonableness."  Specifically, Attorney Moorman was not unreasonable in his failure to realize that the videotape contained an admission by Petitioner.  According to Attorney Moorman's affidavit, he had reviewed the tape "two or three times" and had even reviewed the tape once with Petitioner before the

Government submitted the tape into evidence.  Any failure by Attorney Moorman to notice Xavier's admission cannot be attributable to an unreasonable effort by Moorman, but rather to the fact that the admission was "brief" in conjunction with "the quality of the tape, or due to Xavier's accent, or for some other reason."  An attorney is not expected to be infallible, ***United States v. Zylstra*, 713 F.2d 1332, 1338 (7th Cir. 1983)**, but instead to provide objectively reasonable assistance, which Attorney Moorman certainly did in these circumstances.

Second, Petitioner has not met his burden under the second prong of ***Strickland*** since evidence besides the videotape also established Petitioner's admission.  Assuming Moorman had successfully suppressed or objected to the videotape, Physician's Assistant David Abbott's testimony (which this Petition does not challenge) would still have been before the Court.  Consequently, Xavier's admission would have still been before the Court.  Abbott's testimony in addition to the testimony of other officers that Xavier committed the charged acts precludes a reasonable possibility that Xavier might have presented a successful defense had the videotape not been admitted.

Third, Petitioner has not met his burden under the second prong of ***Strickland*** for the separate reason that Petitioner has not developed an argument to show that the videotape was inadmissible.  A movant waives arguments that are not adequately developed or supported.  ***Cf. United States v. Jones*, 224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not adequately developed**

**or supported are waived")**.  To begin, Petitioner does not even state the standard for ineffective assistance of counsel.  Instead, the Court must rely on its own research and the Government's response to find this standard.  Next and more importantly, Petitioner makes only  a brief, cursory reference to ***Miranda v. Arizona*** (Doc. 1, p. 24, 25, 27, 29, 30) and only notes the general rule that an individual in custody should be read his rights (Doc. 1, p. 25, 30).   Petitioner gives no further explanation of ***Miranda***'s facts, reasoning, or holding, does not bother to provide a citation to any reporter, and comes nowhere near to suggesting how ***Miranda*** should apply in this unique case involving a prisoner and a medical exam.   In particular, Petitioner's cursory argument pays no attention to such matters as (1) whether he, as inmate, was in "custody," ***see, e.g., United States v. Menzer***, **29 F.3d 1223, 1232 (7th Cir. 1994)(stating that a court must consider multiple factors in "determin[ing] whether the prisoner was 'in custody'")**; or (2) whether Physician's Assistant Abbott's completion of a standard processing form constituted an "interrogation," ***see, e.g., United States v. Kane***, **726 F.2d 344, 349 (7th Cir. 1984)(holding "[a] Miranda interrogation violation does not occur when arresting officers question a defendant only to a limited extent")**.  This Court cannot serve as Petitioner's counsel and set forth arguments that his counsel on this petition has failed to present.

Fourth, Petitioner has not met his burden under the second prong of ***Strickland*** for the separate reason that the videotape was admissible.  The facts

clearly show that no **Miranda** warnings were necessary because (1) Petitioner, who was already an inmate, was not in "custody," **see, e.g., Menzer, 29 F.3d at 1232,** and (2) Physician's Assistant Abbott's questions did not constitute an "interrogation," **see, e.g., Kane, 726 F.2d at 349**.

Moreover, it is clear that the Defendant's strategy has changed. In his discussion with the Court regarding his waiver of a jury (R. at 6), the Defendant made reference to this particular statement by him as one where he was supposedly quoting the deputies.[2] With that strategy, we now learn, the Defendant wanted the video admitted. Once he learned the Court did not accept such an interpretation of his statement, his strategy changed to one that the video should have been kept out. Such a shift in strategy would appear to be ineffective "clienting" not ineffective "lawyering." It is disingenuous and it can't withstand any analysis.

### D. Claim 3 – Attorney Moorman's "failure" at trial to object to the videotape based on "physician-patient" privilege

Petitioner next argues in Claim 3 that Attorney Moorman failed to

---

[2] Petitioner stated the following as he waived his right to a jury:
I'm not American. I won't talk American. I've never been taught American. So, that's how I talk, you know what I mean? So, that's why I want you to try to understand certain things when I speak. I hope they wouldn't understand me and misinterpret what I'm saying as a threat or as admitting to anything I did, because I admit to nothing. You understand me? It's how I speak, you know. . . . There's a part of the video where it sounds like I'm saying, yeah, he called me a punk, so I kicked him. I was only repeating exactly what the deputy said I did, because there's no way I could have kicked nobody with leg irons, lockbox, and shackles on my foot.
(R. at 6.)

provide him with effective assistance of counsel as required under the Sixth Amendment when Moorman failed to challenge admission of the videotape at trial based on the fact that there was a "physician-patient privilege which was not waived by Mr. Xavier." (Doc. 1, p. 25-26.) Petitioner cites no case or rule supporting his position.

The Court concludes that Petitioner has not shown ineffective assistance of counsel for several reasons. First, Petitioner has not met his burden under the first prong of **Strickland** that requires a showing that Moorman's actions fell "below an objective standard of reasonableness." Specifically, Attorney Moorman was not unreasonable in his failure to realize that the videotape contained an admission by Petitioner. According to Attorney Moorman's affidavit, he had reviewed the tape "two or three times" and had even reviewed the tape once with Petitioner before the Government submitted the tape into evidence. Any failure by Attorney Moorman to notice Xavier's admission cannot be attributable to an unreasonable effort by Moorman, but rather to the fact that the admission was "brief" in conjunction with "the quality of the tape, or due to Xavier's accent, or for some other reason." An attorney is not expected to be infallible, **United States v. Zylstra, 713 F.2d 1332, 1338 (7th Cir. 1983)**, but instead to provide objectively reasonable assistance, which Attorney Moorman certainly did in these circumstances.

Second, Petitioner has not met his burden under the second prong of **Strickland** since evidence besides the videotape also established Petitioner's

admission.  Assuming Moorman had successfully suppressed or objected to the videotape, Physician's Assistant David Abbott's testimony (which this Petition does not challenge) would still have been before the Court.  Consequently, Xavier's admission would have still been before the Court.  Abbott's testimony in addition to the testimony of other officers that Xavier committed the charged acts precludes a reasonable possibility that Xavier might have presented a successful defense had the videotape not been admitted.

Third, Petitioner has not met his burden under the second prong of **Strickland** for the separate reason that Petitioner has not developed an argument to show that the videotape was inadmissible.  A movant waives arguments that are not adequately developed or supported.  **Cf. United States v. Jones, 224 F.3d 621, 624 (7th Cir. 2000)(stating "[a]rguments that are not adequately developed or supported are waived")**.  To begin, Petitioner does not even state the standard for ineffective assistance of counsel.  Instead, the Court must rely on its own research and the Government's response to find this standard.  Next and more importantly, Petitioner cites no rule or case to support his claim that the videotape violated the "physician-patient" confidentiality.  This Court cannot serve as Petitioner's counsel and set forth arguments that his counsel on this petition has failed to present.

Third, Petitioner has not met his burden under the second prong of **Strickland** for the separate reason that the admission of the videotape is not barred by physician-patient confidentiality.  "[F]ederal common law does not recognize a

physician-patient privilege." ***Patterson v. Caterpillar, Inc.***, **70 F.3d 503, 506-07** **(7ᵗʰ Cir. 1995)(citing *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977), and *United* *States v. Bercier*, 848 F.2d 917, 920 (8ᵗʰ Cir. 1988))**.   In this case, federal common law applied in this case involving federal crimes, and so no physician-patient privilege existed.  Alternatively, prisoners cannot invoke the physician-patient privilege as to BOP physicians.  ***Ueland v. United States*, 291 F.3d 993, 999 (7ᵗʰ** **Cir. 2002)**.

### E.  Claim 4 – Attorney Moorman's "failure" to file a timely post-trial motion

Petitioner next argues in Claim 4 that Attorney Moorman failed to provide him with effective assistance of counsel as required under the Sixth Amendment when Moorman failed to file a timely post-trial motion concerning ineffective assistance in failing to oppose the videotape's admission.  (Doc. 1, p. 26-28.)

The Court concludes that Petitioner has not shown ineffective assistance of counsel for several reasons.  First, Petitioner has not met his burden under the first prong of ***Strickland*** that requires a showing that Moorman's actions fell "below an objective standard of reasonableness."  Attorney Moorman acted reasonably given the confusion created by Xavier.  As Attorney Moorman stated in his motion for leave to file post trial motion instanter:

[D]ue to counsel's misunderstanding of defendant's intention to proceed

> immediately to sentencing herein, and defendant's request that counsel
> withdraw as appointed counsel, . . . counsel for defendant did not file
> a post trial motion which Defendant indicates that he intended for
> counsel to file.

(Doc. 1, Ex. 3; Doc. 30 in 01-CR-30038-DRH).  Under these confusing circumstances

created by Xavier's conflicting directions, it was not unreasonable that Attorney

Moorman failed to file a timely motion, especially after his request to withdraw had

been granted.

Second, Petitioner has not met his burden under the second prong of

**Strickland** since Petitioner has not shown that Attorney Moorman could establish

that ineffective assistance of counsel occurred.  As explained above, Petitioner has

not set forth a single argument that shows ineffective assistance occurred.   **See**

**supra** Parts III.B-D.   Each of Petitioner's arguments alleging ineffective assistance

of counsel based on pretrial discovery, *Miranda*, and "physician-patient" privilege,

fails for multiple and  separately sufficient reasons.  **Id.**  Since Petitioner cannot

show that ineffective assistance occurred, he cannot show that a timely filed post-trial

motion concerning ineffective assistance would have mattered.


### F.  Claims 5-8 Appellate Counsel's Representation

In Claims 5-8, Petitioner suggests his Appellate Counsel, James Gomric,

provided ineffective assistance of counsel under the Sixth Amendment because he

did not raise on direct appeal the issues stated in Counts 1-4 of the current petition.

(Doc. 1, p. 28-35.)

The Court rejects these arguments. First, Appellate Counsel was not objectively unreasonable in not raising Trial Counsel's ineffective assistance on appeal since nothing indicates that ineffective assistance occurred. ***See supra* Parts III.B-E**. Second, Appellate Counsel exercised his professional judgment in an objectively reasonable way when he decided not to raise ineffective assistance on appeal and thereby to leave the possibility of raising the matter in this § 2255, which is a much better way to raise such an issue. ***Massaro v. United States*, 538 U.S. 500, 504-509 (2003)(stating a preference for bringing claims of ineffective assistance in a collateral attack rather than on a direct appeal)**. Third, since Petitioner cannot show that ineffective assistance occurred at trial, ***see supra* Parts III.B-E**, he cannot show that Appellate Counsel's failure to raise this issue on appeal would have mattered.

### G.  Hearing on Petition

Because Petitioner and the Government have no factual disputes (both accept the record and Attorney Moorman's affidavit as accurate accounts of the proceedings), a hearing is unnecessary. ***See Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988)**; ***see also Jeter v. Keohane*, 739 F.2d 257, 257 n.1 (7th Cir. 1984)(stating "[a]n evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court")**.

### IV.  Conclusion

Accordingly,   the   Court   **DENIES**   Xavier's   28   U.S.C.   §   2255 petition/motion.  The Court **DISMISSES with prejudice** Xavier's' 28 U.S.C. § 2255 petition/motion.

**IT IS SO ORDERED.**

Signed this 6th day of June, 2005.

/s/    David RHerndon
**United States District Judge**